**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| 1199SEIU NATIONAL BENEFIT FUND, et al., on behalf of themselves and others similarly situated, | Case No. 3:24-cv-00783 (AWT) |
| Plaintiffs, | |
| v. | |
| BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., et al., | August 6, 2024 |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................... 2

        A.      Factual Background ................................................................................ 2

        B.      Procedural Background........................................................................... 4

                1.      Connecticut Action ................................................................... 4

                2.      Massachusetts Action................................................................ 5

III.    ARGUMENT ........................................................................................................ 6

        A.      Venue Is Proper in Connecticut. ........................................................... 6

        B.      Defendants Sidestep the Prevailing Procedures Available Where Different
                Proposed Class Cases Are Filed in Different Jurisdictions. ...................7

        C.      The Court Should Not Transfer this Case Pursuant to the First-Filed Rule. ......... 9

                1.      The First-Filed Rule Does Not and Should Not Apply. ........................... 9

                2.      Forum Shopping—an Exception to the First-Filed Rule—Drives
                        Boehringer's Motion. ................................................................ 12

                3.      The First-Filed Rule Does Not Apply Where the Parties Are Not
                        Identical................................................................................... 18

                4.      The Procedural Posture of the Two Cases Also Warrants Departure
                        from the First-Filed Rule. ....................................................... 20

                5.      The Balance of Convenience Favors Maintaining This Action in
                        Connecticut. ........................................................................... 21

        D.      The Court Should Not Enter a Stay. .................................................... 28

IV.     CONCLUSION................................................................................................... 30

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A. Olinick & Sons v. Dempster Bros.*,
    365 F.2d 439 (2d Cir. 1966).................................................................................24

*AL & PO Corp. v. Am. Healthcare Cap., Inc.*,
    No. 14 C 1905, 2015 WL 738694 (N.D. Ill. Feb. 19, 2015)....................................24

*Alden Corp. v. Eazypower Corp.*,
    294 F. Supp. 2d 233 (D. Conn. 2003) ...................................................................10

*Am. Steamship Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*,
    474 F. Supp. 2d 474 (S.D.N.Y. 2007), *aff'd sub nom. N.Y. Marine & Gen. Ins.*
    *Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010) ............................... *passim*

*Beach v. Citigroup Alt. Invs. LLC*,
    2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) ...........................................................18

*Boehringer Ingelheim Vetmedica, Inc. v. Merial, Ltd.*,
    No. 3:09CV212 (AWT), 2010 WL 174078 (D. Conn. Jan. 14, 2010) .............................23, 27

*Burke v. Bimbo Bakeries USA, Inc.*,
    No. 5:19-CV-902, 2019 WL 6068038 (N.D.N.Y. Nov. 15, 2019)............................12

*Calderon v. Clearview AI, Inc.*,
    No. 20 CIV. 1296 (CM), 2020 WL 2792979 (S.D.N.Y. May 29, 2020)..................19

*Carr-Stock v. Orthotic Rehab. Prods., Inc.*,
    832 F. Supp. 2d 229 (W.D.N.Y. 2011) ..................................................................24

*Cent. Sports Army Club v. Arena Assocs., Inc.*,
    952 F. Supp. 181 (S.D.N.Y. 1997).........................................................................7

*Cherry v. Domestic Corp.*,
    986 F.3d 1296 (11th Cir. 2021) .............................................................................16

*Country Home Prods., Inc. v. Schiller-Pfeiffer, Inc.*,
    350 F. Supp. 2d 561 (D. Vt. 2004).........................................................................22

*Delta Air Lines, Inc. v. Ass'n of Flight Attendants*,
    720 F. Supp. 2d 213 (E.D.N.Y. 2010) ...................................................................26

*Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*,
    522 F.3d 271 (2d Cir. 2008)............................................................................10, 20

*Famular v. Whirlpool Corp.*,
    No. 16 CV 944, 2017 WL 2470844 (S.D.N.Y. June 7, 2017)................................18

*First City Nat'l Bank & Tr. Co. v. Simmons*,
    878 F.2d 76 (2d Cir. 1989)..............................................................10, 19, 22, 28

*Fit & Fun Playscapes, LLC v. Sensory Path, Inc.*,
    No. 19 CIV. 11697 (NSR), 2022 WL 118257 (S.D.N.Y. Jan. 12, 2022) ................10

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Glater v. Eli Lilly & Co.*,
    712 F.2d 735 (1st Cir. 1983) ................................................................................17

*Goggins v. All. Cap. Mgmt., L.P.*,
    279 F. Supp. 2d 228 (S.D.N.Y. 2003) .................................................................12

*GT Plus, Ltd. v. Ja-Ru, Inc.*,
    41 F. Supp. 2d 421 (S.D.N.Y. 1998) ...................................................................10

*Hawley v. Accor N. Am., Inc.*,
    552 F. Supp. 2d 256 (D. Conn. 2008) ..................................................................26

*Iconic IP Holdings, L.L.C. v. Gerrit's Brands, Inc.*,
    No. 21-CV-1068 (AMD) (ST), 2021 WL 7543607 (E.D.N.Y. May 21, 2021) .......10

*In re Asacol Antitrust Litigation*,
    907 F.3d 42 (1st Cir. 2018) .................................................................................16

*In re: Cal. Wine Inorganic Arsenic Levels Prods. Liab. Litig.*,
    109 F. Supp. 3d 1362 (J.P.M.L. 2015) ..................................................................9

*In re Literary Works in Elec. Databases Copyright Litig.*,
    No. M-21-90 GBD, 2001 WL 204212 (S.D.N.Y. Mar.1, 2001) ...........................28

*In re Namenda Indirect Purchaser Antitrust Litig.*,
    338 F.R.D. 527 (S.D.N.Y. 2021) .........................................................................16

*In re Nat'l Grid Tax Gross-Up Adder Litig.*,
    669 F. Supp. 3d 1381 (J.P.M.L. 2023) ..................................................................9

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
    522 F.3d 6 (1st Cir. 2008) ...................................................................................17

*In re Publication Paper Antitrust Litig.*,
    2005-2 Trade Cas. (CCH) ¶ 74884, 2005 WL 1629633 (D. Conn. July 5,
    2005) .....................................................................................................................18

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
    335 F.R.D. 1 (E.D.N.Y. 2020) .............................................................................16

*In re S. Ry. Emp. Pracs. Litig.*,
    441 F. Supp. 926 (J.P.M.L. 1977) .........................................................................9

*In re Scrap Metal Antitrust Litig.*,
    No. 1:02-CV-0844, 2002 WL 31988203 (N.D. Ohio Aug. 5, 2002) ....................20

*In re Vanguard Chester Funds Litig.*,
    625 F. Supp. 3d 362 (E.D. Pa. 2022) ...................................................................20

*In re Warrick*,
    70 F.3d 736 (2d Cir. 1995) ...........................................................................12, 25

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Intema Ltd. v. NTD Lab'ys, Inc.*,
    654 F. Supp. 2d 133 (E.D.N.Y. 2009) ............................................................10, 25

*Invivo Rsch., Inc. v. Magnetic Resonance Equip. Corp.*,
    119 F. Supp. 2d 433 (S.D.N.Y. 2000) .................................................................8

*Iragorri v. United Techs. Corp.*,
    274 F.3d 65 (2d Cir. 2001) ...........................................................................23, 25

*IUE AFL-CIO Pension Fund v. Herrmann*,
    9 F.3d 1049 (2d Cir. 1993) ...............................................................................17

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ..........................................................................................28

*Massachusetts Laborers' Health & Welfare Fund v. Boehringer Ingelheim*
    *Pharms. Inc.*,
    No. 1:24-cv-10565 (D. Mass. Mar. 6, 2024) ......................................................5

*Milham v. White*,
    No. 15-3333 ADM/LIB, 2016 WL 3030238 (D. Minn. May 26, 2016)...............7

*Montro Corp. v. Prindle*,
    105 F. Supp. 460 (S.D.N.Y. 1952) ....................................................................28

*Motion Picture Lab'y Technicians Loc. 780 v. McGregor & Werner, Inc.*,
    804 F.2d 16 (2d Cir. 1986) ...........................................................................10, 13

*Nova Grp., Inc. v. Universitas Educ., LLC*,
    No. 3:11CV342 AWT, 2011 WL 5570793 (D. Conn. Nov. 16, 2011).............8, 27

*O'Hopp v. ContiFinancial Corp.*,
    88 F. Supp. 2d 31 (E.D.N.Y. 2000) ..............................................................12, 13

*Oleg Cassini, Inc. v. Serta, Inc.*,
    No. 11 Civ. 8751(PAE), 2012 WL 844284 (S.D.N.Y. Mar. 13, 2012) ..............9, 10

*Owner-Operator Indep. Drivers Ass'n v. Arctic Express, Inc.*,
    238 F. Supp. 2d 963 (S.D. Ohio 2003) ..............................................................18

*Quinn v. Walgreen Co.*,
    958 F. Supp. 2d 533 (S.D.N.Y. 2013)........................................................11, 19, 28

*Regions Bank v. Wieder & Mastroianni, P.C.*,
    170 F. Supp. 2d 436 (S.D.N.Y. 2001)...........................................................29, 30

*Rolls-Royce Motors, Inc. v. Charles Schmitt & Co.*,
    657 F. Supp. 1040 (S.D.N.Y. 1987).................................................................21

*Rothschild v. Gen. Motors LLC*,
    No. 19-cv-05240 (DLI)(RLM), 2020 WL 13581659 (E.D.N.Y. Sept. 30,
    2020) ........................................................................................................10, 11, 19

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Royal & Sun All. Ins., PLC v. Nippon Express USA, Inc.*,
    202 F. Supp. 3d 399 (S.D.N.Y. 2016)......................................................................26

*SEC v. RPM Int'l, Inc.*,
    223 F. Supp. 3d 110 (D.D.C. 2016) ......................................................................13

*Shimon v. Equifax Info. Servs. LLC*,
    No. 18-cv-2959 (BMC), 2018 WL 4906245 (E.D.N.Y. Oct. 9, 2018)........................... *passim*

*Smith v. Bayer Corp.*,
    564 U.S. 299 (2011)......................................................................18

*SoccerSpecific.com v. World Class Coaching, Inc.*,
    No. CIV. 08-6109-TC, 2008 WL 4960232 (D. Or. Nov. 18, 2008) .......................................26

*Societe Generale v. Fla. Health Scis. Ctr., Inc.*,
    No. 03 CIV. 5615 (MGC), 2003 WL 22852656 (S.D.N.Y. Dec. 1, 2003)..........................8, 21

*Spotless Enters. Inc. v. The Accessory Corp.*,
    415 F. Supp. 2d 203 (E.D.N.Y. 2006) ......................................................................10

*Stein v. Teekay Corp.*,
    No. 3:16-cv-00345 (VAB), 2016 WL 10490287 (D. Conn. Nov. 18, 2016)..........................7

*Terukuni Kaiun Kaisha, Ltd. v. C. R. Rittenberry & Assocs.*,
    454 F. Supp. 418 (S.D.N.Y. 1978)......................................................................26

*Thomas v. Beech-Nut Nutrition Co.*,
    No. 1:21-CV-133, 2022 WL 18399665 (N.D.N.Y. Mar. 22, 2022) .......................................20

*United States v. Cinemark USA, Inc.*,
    66 F. Supp. 2d 881 (N.D. Ohio 1999)......................................................................13

*United States v. Standard Ultramarine & Color Co.*,
    137 F. Supp. 167 (S.D.N.Y. 1955)......................................................................29

*United States v. Topco Assocs.*,
    405 U.S. 596 (1972)......................................................................29

*William Gluckin & Co. v. Int'l Playtex Corp.*,
    407 F.2d 177 (2d Cir. 1969)......................................................................10, 14, 22

*Williams Advanced Materials, Inc. v. Target Tech. Co.*,
    No. 03-CV-276-A, 2007 WL 2245886 (W.D.N.Y. Aug. 1, 2007) .................................12, 13, 28

*Williams v. City of New York*,
    No. 03 Civ. 5342(RWS), 2006 WL 399456 (S.D.N.Y. Feb. 21, 2006)..........................26

*Wyler-Wittenberg v. MetLife Home Loans, Inc.*,
    899 F. Supp. 2d 235 (E.D.N.Y. 2012) ......................................................................12, 25

*Wyndham Associates v. Bintliff*,
    398 F.2d 614 (2d Cir. 1968)......................................................................8, 12

**TABLE OF AUTHORITIES**
(continued)

**Page**

**Statutes**

15 U.S.C. § 22 .................................................................................................................17

28 U.S.C. § 1391 ............................................................................................................6, 7

28 U.S.C. § 1404 ........................................................................................................ *passim*

28 U.S.C. § 1407 ................................................................................................1, 7, 8, 11

**Court Rules**

Fed. R. Civ. P. 12 ...........................................................................................................17

Fed. R. Civ. P. 13 ...........................................................................................................18

Fed. R. Civ. P. 23 ......................................................................................................16, 18

Fed. R. Civ. P. 45 ...........................................................................................................14

**Other Authorities**

3 William B. Rubinstein, Newberg on Class Actions (5th ed.) ......................................18

Multidistrict Litigation Manual (2024) ...........................................................................8

## I.      <u>INTRODUCTION</u>

This case alleges that Connecticut-based Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer, Inc.") and its German parent Boehringer Ingelheim International GmbH ("Boehringer GmbH," together "Boehringer") manipulated the patent system to maintain an unlawful monopoly over Combivent Respimat and Spiriva Respimat, life-saving treatments for asthma and chronic pulmonary obstructive disease ("COPD").

This District—Boehringer, Inc.'s home forum—has the strongest relationship to the dispute.  Yet Boehringer seeks to go to Massachusetts, where another health and welfare fund filed a similar case less than two months earlier.  Boehringer offers no practical reason for the switch—it does not and cannot argue that Massachusetts would be more convenient or less prejudicial to Boehringer in some respect.  And Boehringer simply ignores the Congressionally-authorized procedures for addressing overlapping proposed class cases:  transfer under Section 1404, centralization by the Judicial Panel on Multidistrict Litigation under Section 1407, and coordination among the litigants.

The Court might reasonably ask, "Why?"  The answer:  Forum shopping.  As explained below, transferring the case to Massachusetts would enable Boehringer to pick and choose which of its employees would be called live at trial, rather than maintaining all of them under the subpoena power of the trial court.  Transfer to Massachusetts would also give Boehringer the benefit of what its own lawyers claim to be more defense-friendly circuit law.  And Boehringer ignores the statutes because the Section 1404 and Section 1407 standards would never support its motion, given that the relevant witnesses live in, and the underlying conduct occurred in, Connecticut and elsewhere—but not in Massachusetts.

Instead, to escape to Massachusetts and the First Circuit, Boehringer invokes the "first-filed rule."  But the first-filed rule is not the trump card Boehringer hopes it will be.  The first-

filed rule does not apply in instances of forum shopping, is of questionable applicability in cases that involve two completely different plaintiffs, and does not obviate consideration of the Section 1404 factors.  And, those factors demonstrate that Connecticut is the proper forum for resolving claims against a Connecticut-based defendant, involving events that took place in and witnesses residing in Connecticut.

If Boehringer chooses not to seek to centralize the litigation here, plaintiffs stand ready, willing, and able to cooperatively coordinate discovery and all other pre-trial matters with the Massachusetts case.  This Court should not countenance Boehringer's procedural gambit. Boehringer's motion should be denied.

## II.   BACKGROUND

### A.   Factual Background

Combivent Respimat and Spiriva Respimat are inhalers that offer patients relief from asthma and COPD.  Plaintiffs allege that Boehringer illegally monopolized the markets for these drugs by manipulating the patent system to prevent entry of generic competitors.[1]  Boehringer listed numerous device-only patents in the FDA's "Orange Book" for both Combivent Respimat and Spiriva Respimat despite FDA regulations explicitly providing that patent holders may only list "drug substance," "drug product," and "method of use" patents.[2]  Boehringer did so in order to wrongfully gain the ability to trigger an automatic, thirty-month stay of approval for a generic competitor.[3]  When a potential generic competitor, Anobri, filed for approval, Boehringer used an automatic stay to delay approval and brought sham litigation against Anobri—presumably at

---

[1] Am. Class Action Compl. ("Am. Compl.") ¶¶ 102-38 (July 17, 2024), ECF No. 38.

[2] *Id.* ¶¶ 40-45, 111-12.

[3] *Id.* ¶ 37.

the direction of employees working at its Connecticut headquarters.[4]  Boehringer's Connecticut-based employees also obtained approval of New Drug Applications for Combivent Respimat and Spiriva Respimat from the Federal Drug Administration.[5]  This approval permitted Boehringer to switch to the Respimat inhaler device (a product hop from a traditional L-shaped inhaler), which plaintiffs allege foreclosed generic competition for Combivent Respimat and Spiriva Respimat.[6]

Boehringer's program has reaped it significant rewards, all on the backs of U.S. payors and patients.  Even today, Boehringer continues to charge as much as $500 (and more than $600 after retail markups) per month for these inhaler products even though the main ingredients (ipratropium-albuterol and tiotropium) in these inhalers have been in the public domain for decades.[7]  They presently cost as much as ten times more than in Germany, Japan, Canada, France, and the United Kingdom where Boehringer has not been able to illegally manipulate those countries' patent systems.[8]  Boehringer has earned over $45 billion in profits from its monopoly on these inhalers.[9]

Boehringer does not maintain any offices or operations in Massachusetts, and the Massachusetts case does not allege that any underlying unlawful conduct by Boehringer occurred in that state.

---

[4] *Id.* ¶¶ 134-38.

[5] *Id.* ¶¶ 100-01, 111-12.

[6] *Id.* ¶¶ 106-08.

[7] *Id.* ¶¶ 2, 6.

[8] *Id.* ¶ 6.

[9] *Id.* ¶ 3.

## B.  Procedural Background

### 1.  Connecticut Action

Plaintiffs 1199SEIU National Benefit Fund, 1199SEIU Greater New York Benefit Fund, 1199SEIU National Benefit Fund for Home Care Workers, and 1199SEIU Licensed Practical Nurses Welfare Fund (together, the "1199 SEIU Benefit Funds") filed a complaint against Boehringer on April 29, 2024, and a protective order was entered on the same day.[10]  Boehringer agreed to accept service through counsel on June 3, 2024, which eliminated the need for plaintiffs to serve Boehringer GmbH through the Hague Convention on Service, which can take over a year.[11]  In exchange, plaintiffs agreed to stay discovery until this Court decides a motion to dismiss by Boehringer and extend Boehringer's deadline to answer or respond to the complaint until September 17, 2024, or sixty days from the date of the amended complaint.[12]  Plaintiffs filed their amended complaint on July 17, 2024, and Boehringer's motion to dismiss would be due no later than September 17, 2024, pending court approval of the aforementioned stipulation.[13]  Briefing on Boehringer's anticipated motion to dismiss should conclude no later than October 22, 2024.[14]

Boehringer filed this motion on July 16, 2024.  Before and after the filing of the motion, counsel for plaintiffs and Boehringer conferred about the question of venue.  Plaintiffs asked if Boehringer would agree that the Massachusetts District Court has personal jurisdiction over all

---

[10] Class Action Compl. (Apr. 29, 2024), ECF No. 1; Standing Protective Order (Apr. 29. 2024), ECF No. 5.

[11] Joint Mot. Extension of Time (June 3, 2024), ECF No. 22.

[12] *Id.*

[13] Am. Compl. (July 17, 2024), ECF No. 38; Joint Mot. Extension of Time (June 3, 2024), ECF No. 22.

[14] *See* D. Conn. L. R. 7.

claims against both Boehringer entities and whether it would make all of its relevant Connecticut-based employees available to testify live at trial.  Boehringer refused both requests and stated that neither Boehringer entity would waive the 100-mile limitation on trial subpoenas under the Federal Rules.

**2.**    **Massachusetts Action**

Massachusetts Laborers' Health & Welfare Fund ("Massachusetts Laborers") filed a complaint alleging Boehringer monopolized the Combivent Respimat and Spiriva Respimat markets on March 6, 2024.[15]  Massachusetts Laborers served Boehringer, Inc. on March 20, 2024.[16]  On April 9, 2024, the parties filed a stipulation providing that (1) Boehringer GmbH would accept service of the complaint, (2) Massachusetts Laborers could amend its complaint within thirty days of the execution of the stipulation, and (3) defendants had until July 18, 2024, or sixty days from the date the amended complaint to answer or otherwise respond.[17]  The parties also stipulated to stay discovery.[18]  Massachusetts Laborers amended its complaint on May 9, 2024.[19]

On July 18, 2024, Boehringer moved to dismiss for failure to state a claim.[20]  The parties subsequently stipulated to (1) extending Massachusetts Laborers' deadline to oppose the motion to dismiss until August 22, 2024, (2) a supplemental brief by Boehringer addressing

---

[15] Class Action Compl., *Massachusetts Laborers' Health & Welfare Fund v. Boehringer Ingelheim Pharms. Inc.* ("Massachusetts Laborers"), No. 1:24-cv-10565 (D. Mass. Mar. 6, 2024), ECF No. 1.

[16] Returned Executed Summons, *Massachusetts Laborers* (D. Mass. Mar. 25, 2024), ECF No. 9.

[17] Stipulation, *Massachusetts Laborers* (D. Mass. Apr. 9, 2024), ECF No. 16.

[18] *Id.*

[19] Am. Class Action Compl., *Massachusetts Laborers* (D. Mass. May 9, 2024), ECF No. 57.

[20] Mot. to Dismiss, *Massachusetts Laborers* (D. Mass. July 18, 2024), ECF No. 66.

developments in its litigation against Anobri, and (3) setting Boehringer's deadline to submit a
reply brief, if it seeks leave to submit one, as no later than September 12, 2024.[21]  On August 1,
the court entered the stipulation.[22]  Boehringer filed its supplemental brief on August 2, 2024,
and briefing on the motion to dismiss will be complete by September 12, 2024.[23]

## III.   **ARGUMENT**

### A.   **Venue Is Proper in Connecticut.**

Boehringer apparently concedes that proper venue exists in Connecticut under Section
1391.[24]  Boehringer, Inc. has its headquarters here, from which it designed and carried out its
alleged scheme to monopolize Combivent Respimat and Spiriva Respimat.[25]  For example,
Boehringer, Inc.'s *Connecticut*-based employees obtained New Drug Applications for
Combivent Respimat and Spiriva Respimat and listed its device-only patents in the Orange
Book.[26]  Boehringer, Inc.'s U.S. Country Managing Director, President, and CEO Jean-Michel
Boers responded to the congressional investigation into the at-issue Orange Book listings *from
Connecticut*.[27]  Boehringer, Inc. also used its German parent's trademark for RESPIMAT® to
market and sell Combivent Respimat (COMBIVENT® RESPIMAT®) and Spiriva Respimat

---

[21] *Id.*

[22] Order, *Massachusetts Laborers* (D. Mass. Aug. 1, 2024), ECF No. 68.

[23] Suppl. Mem., *Massachusetts Laborers* (D. Mass. Aug. 2, 2024), ECF No. 69; *see* Stipulation,
*Massachusetts Laborers* (D. Mass. July 29, 2024), ECF No. 67.

[24] Unless otherwise indicated all references to "Section" refer to a section of Title 28 of the
United States Code.

[25] Am. Compl. ¶ 20.

[26] *Id.* ¶¶ 17, 100-01, 111-12.

[27] Letter to Senator Warren and Representative Jayapal 9-12 (Jan. 15, 2024),
https://www.warren.senate.gov/imo/media/doc/Drug%20Companies'%20Responses%20to%20
Warren%20re%20Orange%20Book%20Patents.pdf; Jean-Michel Boers, *LinkedIn*,
https://www.linkedin.com/in/jean-michel-boers-5b480b15/ (last visited Aug. 2, 2024).

(SPIRIVA® RESPIMAT®) in the United States, including in Connecticut.[28]  And as a result of Boehringer's conduct in Connecticut, third-party payors like plaintiff health and welfare funds paid artificially inflated prices for Combivent Respimat and Spiriva Respimat, including here in Connecticut.  These facts not only satisfy Section 1391 but also make Connecticut the *most* just and proper forum.[29]

**B.     Defendants Sidestep the Prevailing Procedures Available Where Different Proposed Class Cases Are Filed in Different Jurisdictions.**

Boehringer nevertheless seeks to transfer this case.  Yet it sidesteps the prevailing, straightforward procedural tools available where different proposed class cases are pending in different jurisdictions:  (1) venue transfer under Section 1404; (2) centralization by the judicial panel on multidistrict litigation under Section 1407; and (3) coordination between the litigants in both cases.

To start, Boehringer could have sought transfer, including transfer of the Massachusetts Action to its home district, under Section 1404.  Section 1404 permits change of venue "[f]or the convenience of the parties and witnesses, in the interests of justice . . . to any other district or division where it might have been brought."  In fact, defendants in class cases customarily seek transfer on that basis to their home jurisdiction.[30]  Courts often transfer cases to a defendant's

---

[28] Am. Compl. ¶ 18; *Respimat*, U.S. Pat. & Trademark Office, https://tsdr.uspto.gov/#caseNumber=79043223&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (last visited Aug. 2, 2024).

[29] *See* 28 U.S.C. § 1391 ("A civil action may be brought in (1) a judicial district in which any defendant resides . . . [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ."); *Cent. Sports Army Club v. Arena Assocs., Inc.*, 952 F. Supp. 181, 189 (S.D.N.Y. 1997) (denying transfer away from district where a substantial part of the events occurred and where two defendants are located).

[30] *See, e.g.*, *Stein v. Teekay Corp.*, No. 3:16-cv-00345 (VAB), 2016 WL 10490287, at *1-2 (D. Conn. Nov. 18, 2016); *Milham v. White*, No. 15-3333 ADM/LIB, 2016 WL 3030238, at *2 (D.

home jurisdiction pursuant to Section 1404 when the conduct giving rise to the suit occurred there, *even where the first-filed rule prescribed the opposite result*.[31]  Indeed, *Wyndham Associates v. Bintliff*, the only factually similar Second Circuit decision cited by Boehringer, shows this approach.[32]  *Wyndham Associates* analyzed Section 1404 (not the first-filed rule) to affirm the severance and then partial transfer of a shareholder litigation from New York to a court in Texas presiding over multiple other shareholder cases as well as the defunct firm's bankruptcy case and lawsuit against its former officers.[33]  It bears noting that had the first-filed rule been right for this context, the Second Circuit could have saved itself some work.

    Second, Boehringer also could have sought centralization through Section 1407, which authorizes the Judicial Panel on Multidistrict Litigation to transfer related federal cases to one district court for coordinated pretrial proceedings.  Even where, as here, there are only two cases pending in different districts, centralization is possible and common.[34]

    Third, Boehringer could have sought to coordinate discovery and other proceedings across the two case, which plaintiffs here would willingly do.  The Judicial Panel on Multidistrict Litigation endorses coordination by the parties as an alternative to transfer because it minimizes

---

Minn. May 26, 2016) ("[I]n a typical case . . . the defendant seeks to transfer to its home forum . . . .").

[31] *See, e.g.*, *Nova Grp., Inc. v. Universitas Educ., LLC*, No. 3:11CV342 AWT, 2011 WL 5570793, at *3 (D. Conn. Nov. 16, 2011) (Thompson, J.) (granting transfer of first-filed action to New York where defendant maintained its principal place of business); *Societe Generale v. Fla. Health Scis. Ctr., Inc.*, No. 03 CIV. 5615 (MGC), 2003 WL 22852656, at *7-8 (S.D.N.Y. Dec. 1, 2003) (transferring first-filed case to venue where defendants were located and events giving rise to suit occurred there); *Invivo Rsch., Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 440 (S.D.N.Y. 2000) (transferring first-filed case to venue where alleged infringers resided).

[32] *Wyndham Associates v. Bintliff,* 398 F.2d 614, 616-17 (2d Cir. 1968).

[33] *Id.*

[34] *See* Multidistrict Litigation Manual § 5.18 n.8 (2024) (collecting cases).

the risk of duplicative discovery and conflicting rulings, especially where only a few cases and counsel are involved.[35]  Here, party coordination is readily achievable.  The same counsel represents Boehringer in the only two cases on file, and only four firms represent plaintiffs—one here and three in Massachusetts.  Plaintiffs stand ready, willing, and able to coordinate with Massachusetts Laborers.

C.   **The Court Should Not Transfer this Case Pursuant to the First-Filed Rule.**

1.   **The First-Filed Rule Does Not and Should Not Apply.**

Eschewing these procedures, Boehringer instead resorts to the "first-filed" rule.  That rule, however, "most commonly applie[s] to avoid duplicative litigation and to honor the plaintiff's choice of forum *in cases involving identical parties and claims*."[36]  In other words, it targets a different type of case entirely—so-called "mirror image" cases where the captions mirror each other by flipping the order of the identical parties.[37]  This often happens, for example, in the case of IP litigation, where the IP holder and alleged infringer file competing actions for infringement (by the IP holder) and declaratory relief (by the alleged infringer). Applying the first-filed rule in such cases "promotes wise judicial administration, giving regard

---

[35] *See, e.g.*, *In re: Cal. Wine Inorganic Arsenic Levels Prods. Liab. Litig.*, 109 F. Supp. 3d 1362, 1363 (J.P.M.L. 2015) ("informal cooperation among counsel and coordination among the involved courts are, in our judgment, preferable to formal centralization" where there are a minimal number of actions in their infancy); *In re Nat'l Grid Tax Gross-Up Adder Litig.*, 669 F. Supp. 3d 1381, 1382 (J.P.M.L. 2023) ("Informal coordination [of three actions] should be possible to avoid unnecessary duplication of effort."); *In re S. Ry. Emp. Pracs. Litig.*, 441 F. Supp. 926, 927 (J.P.M.L. 1977) (finding that "communication and cooperation between the two concerned district courts, if deemed appropriate by those courts, coupled with the cooperation of the parties, would be sufficient to prevent any duplicative discovery and minimize the possibility of conflicting class determinations or other pretrial rulings" of two class cases).

[36] *Shimon v. Equifax Info. Servs. LLC*, No. 18-cv-2959 (BMC), 2018 WL 4906245, at *2 (E.D.N.Y. Oct. 9, 2018) (emphasis added).

[37] *See Oleg Cassini, Inc. v. Serta, Inc.*, No. 11 Civ. 8751(PAE), 2012 WL 844284, at *3 (S.D.N.Y. Mar. 13, 2012).

to conservation of judicial resources and comprehensive disposition of litigation."[38]  The bulk of

the cases defendants cite for the first-filed rule—eleven—arise in the context of a competing case

for declaratory relief.[39]  Moreover, "[t]he exceptions to the rule—where the first-filed lawsuit is

an improper anticipatory declaratory action or where forum shopping alone motivated the

plaintiff's choice of forum for the first suit, show how the rule is designed to fairly and

effectively manage essentially identical suits between the same or closely related parties."[40]

Multiple proposed class cases, on the other hand, rarely involve the "same or closely

related parties."  Courts evaluating a request to apply the first-filed rule to similar proposed class

actions therefore are often "skeptical that the first-filed rule is generally appropriate in that

---

[38] *Rothschild v. Gen. Motors LLC*, No. 19-cv-05240 (DLI)(RLM), 2020 WL 13581659, at *3 (E.D.N.Y. Sept. 30, 2020) (citation omitted).

[39] *See Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 273-74 (2d Cir. 2008) (two cases sought declaratory relief regarding an insurer's obligation to provide Fox coverage for allegedly using copyrighted music without a license); *First City Nat'l Bank & Tr. Co. v. Simmons*, 878 F.2d 76, 78 (2d Cir. 1989) (plaintiff bank sued investors to enforce loan agreements even though the investors had already sued the bank seeking rescission); *Motion Picture Lab'y Technicians Loc. 780 v. McGregor & Werner, Inc.*, 804 F.2d 16, 17 (2d Cir. 1986) (McGregor sued the union in Florida to challenge an arbitration award, and the union then filed the instant action in New York seeking confirmation of the award); *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 177 (2d Cir. 1969) (Gluckin sued for declaratory relief after defendant Playtex sued a retailer selling Gluckin's product for patent infringement); *Fit & Fun Playscapes, LLC v. Sensory Path, Inc.*, No. 19 CIV. 11697 (NSR), 2022 WL 118257, at *1 (S.D.N.Y. Jan. 12, 2022) (copyright infringement suit and declaratory judgment action); *Iconic IP Holdings, L.L.C. v. Gerrit's Brands, Inc.*, No. 21-CV-1068 (AMD) (ST), 2021 WL 7543607, at *1-2 (E.D.N.Y. May 21, 2021) (trademark infringement suit and declaratory relief action); *Intema Ltd. v. NTD Lab'ys, Inc.*, 654 F. Supp. 2d 133, 136 (E.D.N.Y. 2009) (patent infringement and declaratory relief suits); *Oleg Cassini*, 2012 WL 844284, at *3 (declaratory judgment action and trademark infringement suit); *Spotless Enters. Inc. v. The Accessory Corp.*, 415 F. Supp. 2d 203, 204 (E.D.N.Y. 2006) (patent infringement suit and declaratory judgment action); *Alden Corp. v. Eazypower Corp.*, 294 F. Supp. 2d 233, 234 (D. Conn. 2003) (patent infringement action and declaratory judgment action); *GT Plus, Ltd. v. Ja-Ru, Inc.*, 41 F. Supp. 2d 421, 423 (S.D.N.Y. 1998) (breach of contract suit and declaratory judgment action).

[40] *Shimon*, 2018 WL 4906245, at *2.

context."[41]  The *Shimon* court, in declining to apply the first-filed rule, explained, "In the putative class action context, even assuming that the two complaints define identical classes, the parties will rarely, if ever, actually be identical – the plaintiff in the second-filed action may opt-out if the class is certified or perhaps many members of the first putative class will opt out."[42]  Similarly, "[t]he proposed class representative in the first action may also be found inadequate or the first case may settle before a class is certified."[43]  Further, "[w]hile both cases [] seek certification of a multi-state class, because a nationwide class has not been certified yet neither the parties nor the issues substantially overlap."[44]  Of course, no class has yet been certified here.

Finally, use of the judge-created first-filed rule to manage multiple proposed class actions conflicts with the procedures explicitly authorized by Congress.  The *Shimon* court explained[45]:

> [U]sing the first-filed rule to stay or dismiss a concurrently pending class action would *undermine* other efficiency-maximizing *Congressional directives*.  These include transfers to a more convenient forum under 28 U.S.C. § 1404(a) (which [defendants have] not sought), and multi-districting, or consolidation of similar cases that raise common questions of fact, under 28 U.S.C. § 1407.

Indeed, Congress could have, if it wanted, included the order of filing as a factor in Section 1404 or 1407.  It did not.  Consequently, multiple courts have declined to apply the first-filed rule to situations in which there are multiple proposed class cases in different jurisdictions.[46]  And the

---

[41] *Id.* (multiple Fair Credit Reporting Act cases); *see also Rothschild*, 2020 WL 13581659, at *8-9 (car defect class actions).

[42] *Shimon*, 2018 WL 4906245, at *2; *see also Rothschild*, 2020 WL 13581659, at *8 (same concern).

[43] *Id.*

[44] *Rothschild*, 2020 WL 13581659, at *8.

[45] *Shimon*, 2018 WL 4906245, at *2 (emphasis added).

[46] *Id.* at *2-3; *Rothschild*, 2020 WL 13581659, at *8; *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 539 (S.D.N.Y. 2013).

Second Circuit has not approved applying the first-filed rule to proposed class actions brought by two completely separate, independent plaintiffs.

Boehringer, by contrast, cites only five cases involving overlapping class actions to support applying the first-filed rule.  Three of them, however—*Wyndham Associates*, *Warrick*, and *Goggins*—decided transfer *not* based on the first-filed rule, but rather based on the Section 1404 factors.[47]  And in *Goggins*, seven other cases had already been consolidated in the transferee district.[48]  As noted above, the Second Circuit in *Wyndham* did not even *mention* the first-filed rule.  Boehringer's cases thus underscore the point that the statutory frameworks control the analysis of transfer and consolidation here, *not* the first-filed rule.

> ## 2.   Forum Shopping—an Exception to the First-Filed Rule—Drives Boehringer's Motion.

Boehringer's other two cases—*Burke* and *Wyler-Wittenberg*—did not involve alleged forum-shopping.[49]  This matters.  Where courts suspect defendant forum shopping motivates a motion to transfer, as opposed to a genuine goal of efficiency, "the presumption created by the

---

[47] *In re Warrick*, 70 F.3d 736, 740-41 (2d Cir. 1995) (*reversing transfer* pursuant to the first-filed rule because the lower court "failed to consider, as 28 U.S.C § 1404(a) requires, 'the convenience of the parties and witnesses'"); *Wyndham Assocs.*, 398 F.2d at 616 (transferring pursuant to the Section 1404 factors); *Goggins v. All. Cap. Mgmt., L.P.*, 279 F. Supp. 2d 228, 235 (S.D.N.Y. 2003) (same).

[48] *See Goggins*, 279 F. Supp. 2d at 235 (seven other cases already consolidated in transferee district); *Wyndham Assocs.*, 398 F.2d at 616 (fifteen related cases consolidated in Texas along with bankruptcy proceedings and a lawsuit brought by one defendant against its former employees).

[49] *Burke v. Bimbo Bakeries USA, Inc*., No. 5:19-CV-902 (MAD/ATB), 2019 WL 6068038, at *3 (N.D.N.Y. Nov. 15, 2019) ("[N]either party has accused the other of forum shopping."); *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 246 (E.D.N.Y. 2012) ("[N]either party has accused the other of forum shopping . . . .").

first-filed rule does not apply."[50]  Indeed, a suspicion of forum-shopping "actually provides

further support for maintaining priority here."[51]  The forum shopping exception to the first-filed

rule arises from the judicial "interest in discouraging forum shopping,"[52] especially by

defendants.  Rather, "defendant forum shopping" is "an evil to be avoided."[53]  Thus, a

"[d]efendant['s] choice of forum is not ordinarily entitled to deference."[54]  The "ironic" nature of

a request to transfer cases *away* from the more convenient forum "leads . . . to only one

conclusion-[defendants] are seeking to engage in forum shopping."[55]  The *Williams Advance*

*Materials* court, for instance inferred forum shopping where the movant sought transfer *away*

from the more convenient forum and found "their obviously improper motivations provide[d] an

adequate basis for denying the motion in its entirety."[56]  Similarly, the *O'Hopp* court found that

the request to transfer away from a venue where three defendants were located and most of the

issues arose "may reasonably be inferred to have been motivated by forum shopping."[57]

        Here, no answer other than forum shopping explains Boehringer's attempt to transfer the

case to a *less convenient* forum.  Defendant Boehringer, Inc. maintains its headquarters in

Connecticut, where its employees, including key witnesses, are located, and where the principal

---

[50] *O'Hopp v. ContiFinancial Corp.*, 88 F. Supp. 2d 31, 35 (E.D.N.Y. 2000); *Williams Advanced Materials, Inc. v. Target Tech. Co.*, No. 03-CV-276-A, 2007 WL 2245886, at *5 (W.D.N.Y. Aug. 1, 2007) (denying transfer under first-filed rule due to forum shopping).

[51] *Williams Advanced Materials,* 2007 WL 2245886, at *5.

[52] *Motion Picture Lab'y Technicians*, 804 F.2d at 19 (declining to apply the first-filed rule given apparent forum shopping).

[53] *United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 889 (N.D. Ohio 1999) ("defendant forum shopping" is "an evil to be avoided" (citation omitted)).

[54] *SEC v. RPM Int'l, Inc.*, 223 F. Supp. 3d 110, 116 (D.D.C. 2016).

[55] *Williams Advanced Materials*, 2007 WL 2245886, at *6.

[56] *Id.* at *5-6.

[57] 88 F. Supp. 2d at 35.

anticompetitive conduct relating to Combivent Respimat and Spiriva Respimat allegedly occurred.  Furthermore, the earlier filing of the Massachusetts Action has no practical significance.  It was filed less than two months before this one, motions to dismiss are not fully briefed, and no discovery has been taken.  Indeed, Boehringer filed its first responsive motions in both actions within two days of each other—July 16 (motion to transfer venue filed here) and July 18 (motion to dismiss filed in Massachusetts).[58]  A seven week difference in case initiation resulting in no meaningful procedural difference is the type of "wholly frivolous" reason from which courts may infer forum shopping.[59]  When plaintiffs asked counsel for Boehringer why they preferred Massachusetts to Connecticut, the only reason given was the first-filed rule.

On the other hand, transfer to Massachusetts would give Boehringer substantial tactical benefits.

**Controlling the Live Testimony at Trial.**  *First*, Boehringer seeks to shield its Connecticut-based witnesses from plaintiffs' trial subpoenas.  This would give Boehringer sole control of which of its employees appear at trial, as opposed to the level playing field that exists in Connecticut.  Boehringer could bring the angels and leave the devils at home.  Incredibly, Boehringer demurs that "[t]here is no indication that witnesses available in this Court's jurisdiction would be unavailable in Massachusetts."[60]  Boehringer need look no further than Federal Rule of Civil Procedure 45, which limits courts' power to compel individuals to testify at trial to persons residing, employed, or who regularly transact business in person (a) within 100 miles or (b) within the state.  Boehringer's headquarters employees work in (and presumably live

---

[58] Mot. to Dismiss, *Massachusetts Laborers* (D. Mass. July 18, 2024), ECF No. 65.

[59] *See William Gluckin & Co.*, 407 F.2d at 178.

[60] Mot. at 12.

in or within 100 miles of) Ridgefield, Connecticut, more than 100 miles from the District Court of Massachusetts.

Even without discovery, plaintiffs can identify at least six Boehringer witnesses who could be compelled to testify if this case were venued in Connecticut, but who could—if Boehringer wanted—invoke the 100 mile rule if this case were transferred to Boston.  These include employees in Boehringer's regulatory affairs department, such as Jean-Michel Boers (U.S. Country Managing Director, President, and CEO), Kathy Collins (Vice President & Head of Regulatory Affairs), Mike Morris (Vice President of Intellectual Property), Ingeborg Arny-Cornejo (Senior Associate Director of Regulatory Affairs), Adrian Cheung (former associate director of regulatory affairs), and Steve Berthel (former associate director of regulatory affairs).[61]  Plaintiffs anticipate that Boehringer's regulatory employees will provide testimony on its Orange Book listings, receipt of the FTC's warning letter, and Boehringer's decision to maintain its listings despite that letter.  Employees at Boehringer, Inc.'s headquarters were undoubtedly involved given Combivent Respimat and Spiriva Respimat's status as high revenue drugs.[62]  This concern about witness unavailability is not idle speculation.  Plaintiffs asked Boehringer if it would make its Connecticut employees available to testify in Massachusetts.  Boehringer stated that it would not.  And even if it did, it might not be able to enforce any such

---

[61] Jean-Michel Boers, *LinkedIn*, https://www.linkedin.com/in/jean-michel-boers-5b480b15/ (last visited Aug. 2, 2024); Kathy Collins, *LinkedIn*, https://www.linkedin.com/in/kathy-collins-9a403330 (last visited Aug. 1, 2024); Mike Morris, *LinkedIn*, https://www.linkedin.com/in/mike-morris-388b786/ (last visited Aug. 6, 2024); Ingeborg Arny-Cornejo, *LinkedIn*, https://www.linkedin.com/in/ingeborg-arny-cornejo-402173130 (last visited Aug. 1, 2024).  Mr. Cheung and Mr. Berthel live in New Jersey and New York, which are within 100 miles of this Court, but not the Massachusetts District Court.  Adrian Cheung, *LinkedIn*, https://www.linkedin.com/in/adriancheung (last visited Aug. 1, 2024); Steve Berthel, *LinkedIn*, https://www.linkedin.com/in/berthel (last visited Aug. 1, 2024).

[62] *See* Am. Compl. ¶¶ 3, 12, 64, 79, 122-29.

commitment on employees who retired or otherwise left the company over the course of this case.

**First Circuit Class Certification Jurisprudence.** *Second*, Boehringer seeks to trade the Second Circuit's class certification precedent for what it believes is more favorable jurisprudence in the First Circuit. Gibson Dunn, Boehringer's counsel, has publically hailed the First Circuit decision in *In re Asacol Antitrust Litigation*,[63] as "**a significant victory for class action defendants**."[64] In *Asacol*, the First Circuit reversed class certification where plaintiffs alleged defendant pharmaceutical companies manipulated the patent system to artificially inflate prices. Gibson Dunn, again writing publicly, contrasted what it considers the defendant-friendly class action jurisprudence of the First Circuit with that of the Second Circuit, stating[65]:

> **But not all courts agree, with some holding that there is no heightened requirement to "ascertain" class members before certification**. For example, in *Cherry v. Domestic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021), the Eleventh Circuit reasoned that "administrative feasibility" is just one of many factors that courts can consider when assessing certification. In this decision, the Eleventh Circuit joined the **Second**, Sixth, Seventh, Eighth, and Ninth Circuits in rejecting a strict "ascertainability" requirement in Rule 23(b)(3).

Boehringer's lawyers no doubt also had in mind Second Circuit district court orders that have certified classes without applying a heightened ascertainability requirement in cases alleging

---

[63] 907 F.3d 42 (1st Cir. 2018).

[64] Gibson Dunn, *Fourth Quarter 2018 Update on Class Actions* at 4 (Jan. 18, 2019), https://www.gibsondunn.com/wp-content/uploads/2019/01/fourth-quarter-2018-update-on-class-actions.pdf (emphasis added).

[65] Gibson Dunn, *Emerging Issues and Trends in Class Actions: Three Splits and Four Issues on the Horizon for 2024* at 1 (Dec. 28, 2023), https://www.gibsondunn.com/wp-content/uploads/2023/12/emerging-issues-and-trends-in-class-actions-three-splits-and-four-issues-on-horizon-for-2024.pdf (emphasis added).

pharmaceutical companies manipulated the patent system to inflate drug prices.[66]  Seeking to

gain a tactical advantage on the law offers the quintessential example of a reason to deny a

defense motion to transfer the case.

      **Possible Challenge to Personal Jurisdiction.**  *Third*, Boehringer would benefit from

transfer to a district that does not have general personal jurisdiction over either defendant.

Plaintiffs brought this action in the home forum of Boehringer's U.S. subsidiary to ensure

personal jurisdiction over at least one defendant for the duration of the case.  Because Boehringer

concedes personal jurisdiction in Massachusetts solely on the basis of the Clayton Act, if those

federal antitrust claims become moot or are dismissed, it would have a new opportunity to

contest personal jurisdiction,[67] because pendent personal jurisdiction over state law antitrust

claims may be lost.[68]  This complication could arise on the eve of trial after plaintiffs have spent

years litigating.  Even more troubling, Boehringer could attempt to moot plaintiffs' federal

injunctive-only claims and manufacture a personal jurisdiction dispute by delisting its device-

---

[66] *See, e.g.*, *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 548 (S.D.N.Y. 2021); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 40 (E.D.N.Y. 2020).

[67] Boehringer presently concedes that jurisdiction is present in both Massachusetts and Connecticut under the Clayton Act, 15 U.S.C. § 22, according to plaintiffs' allegations.  Mot. at 6-7.  The Clayton Act provides personal jurisdiction for federal antitrust claims. 15 U.S.C. § 22 ("Any suit, action, or proceeding under the antitrust laws against a corporation . . . .").  Pendent personal jurisdiction exists for plaintiffs' state law claims because those claims derive from a common nucleus of operative fact—Boehringer's Orange Book listings, product hopping, and sham litigation.  *See IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993) (adopting pendent personal jurisdiction).  It is immaterial that Boehringer did not raise personal jurisdiction in its motion to dismiss the Massachusetts action.  The waiver provision in Federal Rule of Civil Procedure 12(g) "extends only to defenses 'then available.'"  *Glater v. Eli Lilly & Co.*, 712 F.2d 735, 738-39 (1st Cir. 1983) (quoting Fed. R. Civ. Pro. 12(g)).

[68] *See In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 16 n.14 (1st Cir. 2008) (noting that after the First Circuit dismissed the federal antitrust claim, pendent personal jurisdiction may be an issue for remand).

only patents.  Plaintiffs filed suit in the home district of Boehringer, Inc., in part to avoid these risks.  Again, this tactical advantage is not idle speculation.  When plaintiffs asked Boehringer whether it would agree to waive contesting personal jurisdiction in Massachusetts for the duration of the case, Boehringer again refused.

### 3.  The First-Filed Rule Does Not Apply Where the Parties Are Not Identical.

Boehringer also does not satisfy the very first requirement of the first-filed rule—that the parties on both sides of the "v" be identical or substantially overlap.  Specifically, plaintiffs in the Connecticut and Massachusetts Actions represent completely different and separate health and welfare funds.  The plaintiffs in the two cases have zero connection.  Boehringer, however, argues for application of the first-filed rule because plaintiffs 1199 SEIU Benefit Funds are members of the proposed class in the Massachusetts Action.[69]  This argument puts the cart before the horse:  neither court has certified a class, so the Connecticut plaintiffs do not belong to the Massachusetts case, nor vice versa.  For example, courts generally do not treat absent class members as "parties" to the lawsuit for purposes of preclusion,[70] personal jurisdiction,[71]

---

[69] Mot. at 9.

[70] *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (holding that federal court's denial of class certification did not preclude later class action brought by an absent class member in state court).

[71] *Famular v. Whirlpool Corp.*, No. 16 CV 944, 2017 WL 2470844, at *2 (S.D.N.Y. June 7, 2017) (citing *Beach v. Citigroup Alt. Invs. LLC*, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014)) ("When the action is brought as a purported class action, personal jurisdiction over each defendant is assessed with respect to the named plaintiffs' causes of action.").

discovery,[72] or Rule 13 counterclaims.[73]  Courts reviewing cases in similar postures in the context of the first-filed rule have determined that "because a nationwide class has not been certified yet, neither the parties nor the issues substantially overlap."[74]  As discussed above, plaintiffs or class members may opt out, the first case may settle before certification, or a proposed class representative may be found inadequate.[75]

What's more, Boehringer goes beyond legal arguments and repeatedly casts plaintiffs' complaint as a "copycat" action.[76]  In doing so, Boehringer implies that plaintiffs verbatim copied the Massachusetts complaint and that initiation of a proposed class action by anyone other than the first named plaintiff is harassment and an abuse of the judicial system.  Boehringer is wrong on both fronts.

*First*, plaintiffs' complaint is no carbon copy.  The complaint concerns the same underlying conduct—Boehringer's monopolization of Combivent Respimat and Spiriva Respimat—but plaintiffs invested significant time and resources independently investigating their claims and drafting an original complaint even before the filing of the Massachusetts

---

[72] *E.g.*, *In re Publication Paper Antitrust Litig.*, 2005-2 Trade Cas. (CCH) ¶ 74884, 2005 WL 1629633 (D. Conn. July 5, 2005) (explaining that absent class members are not "parties" for purposes of the various methods of taking discovery from parties; rather, discovery of absent class members is governed by the court's inherent powers under Rule 23(d)).

[73] *E.g., Owner-Operator Indep. Drivers Ass'n v. Arctic Express, Inc.*, 238 F. Supp. 2d 963, 965 (S.D. Ohio 2003); see 3 William B. Rubinstein, Newberg on Class Actions § 9:24 (5th ed.) (collecting cases).

[74] *Rothschild*, 2020 WL 13581659, at *8; *see also Quinn*, 958 F. Supp. 2d at 539 (denying a first-to-file motion and explaining "no nationwide class has, in fact, been certified . . . [t]herefore, neither the parties nor the issues in this case are identical").

[75] *Shimon*, 2018 WL 4906245, at *2.

[76] *See, e.g.*, Mot. at 2, 7, 13.

complaint.  Boehringer, in fact, contradicts itself and acknowledges a *few* of the differences that resulted from the 1199 SEIU Benefit Funds' independent efforts.[77]  There are many others.[78]

    *Second*, it is common for multiple plaintiffs to file proposed class actions when a corporation or other entity allegedly causes widespread harm.[79]  In those circumstances, courts do not afford plaintiffs different privileges based on the order in which they filed.  Courts recognize, for example, that filing order does not determine appointment of lead counsel.[80]  A contrary rule would encourage an improvident race to the courthouse steps.[81]

### 4. The Procedural Posture of the Two Cases Also Warrants Departure from the First-Filed Rule.

    The procedural posture of the Connecticut and Massachusetts actions presents a special circumstance that supports priority for the second-filed case.  "[W]here there is only a short span of time between the filing of the two actions, . . . [or] where there is a lack of progress in either

---

[77] *Id.* at 9-10.

[78] *See, e.g.*, Am. Compl. ¶¶ 60-65 (in-depth allegations about the benefits of generic entry), ¶¶ 157-80 (relevant market definitions allegations distinguishing nebulizer devices, rescue inhalers, dry powder inhalers, and other drugs).

[79] *See Calderon v. Clearview AI, Inc.*, No. 20 CIV. 1296 (CM), 2020 WL 2792979, at *6 (S.D.N.Y. May 29, 2020) ("Identical issues of law arise in pending cases all the time.").

[80] *Thomas v. Beech-Nut Nutrition Co.*, No. 1:21-CV-133 (DNH/CFH), 2022 WL 18399665, at *4 n.10 (N.D.N.Y. Mar. 22, 2022) ("Although the Thomas plaintiffs were the first-filed complaint in this Court (along with the second, third, and fifth filed), the Court does not find this dispositive . . . ."); *In re Scrap Metal Antitrust Litig.*, No. 1:02-CV-0844, 2002 WL 31988203, at *1 (N.D. Ohio Aug. 5, 2002) ("[C]onsideration of the 'first-to-file' status when making lead counsel determinations has been rejected by many courts.").

[81] *See In re Vanguard Chester Funds Litig.*, 625 F. Supp. 3d 362, 367 (E.D. Pa. 2022) ("Overall, the court must not place too much weight on the timing of the filing of complaints as to avoid a race to the courthouse."); *see also Emps. Ins. of Wausau*, 522 F.3d at 275 ("The two exceptions to the first-filed rule are premised on the notion that the 'federal declaratory judgment is not a prize to the winner of a race to the courthouses.'" (citation omitted)).

litigation" those special circumstances warrant exception to the first filed rule.[82]  Indeed, the

first-filed rule is at its weakest where, like here, the two cases were "filed in quick succession

and[] the court with the first filed action has done little with respect to it."[83]  The two cases were

filed less than two months apart, Boehringer filed its responsive motions to both cases within two

days of each other, and both cases otherwise remain in their infancy.[84]  What's more, the motions

to dismiss in both cases will be fully briefed within six weeks of each other.[85]  It follows that the

first-filed court "has not devoted significant judicial resources . . . or developed any expertise

with regard to the [antitrust] issues, giv[ing] the first-filed rule still less force."[86]

### 5.    The Balance of Convenience Favors Maintaining This Action in Connecticut.

Boehringer ignores the fact that the first-filed rule itself also requires analysis of the

Section 1404 factors.[87]  "The first-filed rule does not supersede the inquiry into the balance of

convenience under § 1404(a) [...] the first-filed rule is *only applied after* consideration of these

factors."[88]  "Consequently, where the first-filed rule is invoked in support of a motion to transfer,

---

[82] *Am. Steamship Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 480 (S.D.N.Y. 2007), *aff'd sub nom. N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010) (denying motion to transfer later-filed case pursuant to first-filed rule).

[83] *Id.* at 489 (collecting cases).

[84] *Supra*, Sections II.B.1 and II.B.2.

[85] *Id.*

[86] *Am. Steamship Owners*, 474 F. Supp. 2d at 489.

[87] Mot. at 4-5.

[88] *Am. Steamship Owners*, 474 F. Supp. 2d at 481 (emphasis added) (citation omitted); *see also Rolls-Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F. Supp. 1040, 1060 n.14 (S.D.N.Y. 1987) ("The 'first-filed' rule" is not "a talismanic principle of decision."); *Societe Generale v. Fla. Health Scis. Ctr., Inc.*, No. 03 Civ. 5615(MGC), 2003 WL 22852656, at *8 (S.D.N.Y. Dec. 1, 2023) ("[A] transfer justified under § 1404(a) is proper even if the action to be transferred was filed before a related action was filed in the transferee district.").

the court considers the rule as one among several factors in the overall calculus of efficiency and the interests of justice."[89]  In other words, even where a court applies the first-filed rule, it must also consider the Section 1404 balance of convenience factors.  These factors include[90]:

> (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

"Balancing factors of convenience is an equitable task, affording a wide degree of discretion to district courts in determining a suitable forum."[91]  "[T]he [first-filed] rule need not be applied where there is a showing of balance of convenience or special circumstances giving priority to the second case" such as where the cases are filed in quick succession or there is a lack of progress in either.[92]

### a.    The Convenience of Witnesses and the Ability to Compel Attendance of Unwilling Witnesses Favors Connecticut.

The convenience of witnesses, which "[s]ome courts have found . . . to be the most important factor in a motion to transfer," favors Connecticut.[93]  In general, this District is convenient for Boehringer's Ridgefield, Connecticut employees, as well as possible former employees who still live in Connecticut.  Above and without the benefit of discovery, plaintiffs

---

[89] *Am. Steamship Owners*, 474 F. Supp. 2d at 481.

[90] *Id.* at 480 (citation omitted).

[91] *Country Home Prods., Inc. v. Schiller-Pfeiffer, Inc.*, 350 F. Supp. 2d 561, 570 (D. Vt. 2004) (citing *First City Nat'l Bank*, 878 F.2d at 80).

[92] *Am. Steamship Owners*, 474 F. Supp. 2d at 481 (citation omitted); *see also William Gluckin & Co.*, 407 F.2d at 179.

[93] *Am. Steamship Owners*, 474 F. Supp. 2d at 482.

already identified six witnesses located closer to Connecticut than Massachusetts.[94]  Boehringer, by contrast, identifies no witness for whom Massachusetts is more convenient.

Further, as discussed above, plaintiffs face a real risk that Boehringer will not make its Connecticut witnesses available to testify live if this case is tried in Massachusetts.[95]  *This Court*, by contrast, will be able compel attendance of Boehringer's Connecticut employees as well as non-party witnesses Steve Berthel and Adrian Cheung who are former employees.  Because anything other than live trial testimony "would clearly be second-best," this factor weighs strongly against transfer.[96]

### b.      The Locus of Operative Facts Is Connecticut.

Boehringer identifies no facts that render Massachusetts the locus of operative facts—"a 'primary factor' in determining whether to transfer venue."[97]  The relevant facts occurred in Connecticut.[98]  While Combivent Respimat and Spiriva Respimat sales (and overcharges) happened in Massachusetts, they also happened in every district in the United States.  This factor weighs strongly against transfer.

### c.      The District of Connecticut Is the Most Convenient for the Parties.

Boehringer maintains its U.S. headquarters in this district.  It is obviously most convenient for Boehringer, Inc.  Furthermore, Boehringer GmbH is presumably accustomed to

---

[94] *Supra*, Section III.C.2.

[95] *Id.*

[96] *See Am. Steamship Owners*, 474 F. Supp. 2d at 485; *see also Boehringer Ingelheim Vetmedica, Inc. v. Merial, Ltd.*, No. 3:09CV212 (AWT), 2010 WL 174078, at *15 (D. Conn. Jan. 14, 2010) (Thompson, J.) ("[A]s to the convenience of witnesses, almost all of the nonparty witnesses reside in or near the District of Connecticut, and the court concludes that this factor weighs heavily against transfer.").

[97] *Id.* at 485.

[98] *Supra,* Section III.A.

traveling to Connecticut.  Any Boehringer GmbH executives who need to come to court will be able to work at the Connecticut HQ and conduct other business during the trip.  What's more, Connecticut is convenient for plaintiffs—it is in their home circuit and near their New York headquarters.[99]  This proximity between plaintiffs' headquarters and Connecticut *benefits* the proposed class:  "[U]nnamed class members presumably benefit from a class representative who is able to aggressively litigate their claims without significant inconvenience due to travel."[100]  This factor disfavors transfer.

### d.    Relative Court Congestion Favors Connecticut.

Additionally, Connecticut has a somewhat less congested docket.  "The relative docket conditions of the transferor and transferee courts are relevant[.]"[101]  There is no significant difference in disposition time between Connecticut and Massachusetts.  The median time from filing to disposition in civil cases is eight months in Connecticut and seven months in Massachusetts.[102]  Likewise, the median time from filing to trial is 40 and 34.6 months, respectively.[103]  Connecticut, however, has fewer pending case per judge in Connecticut (298) than in Massachusetts (381).[104]  Connecticut also has nearly three times fewer civil cases over

---

[99] *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (recognizing convenience as another legitimate reason to select a venue that deserves deference).

[100] *AL & PO Corp. v. Am. Healthcare Cap., Inc.*, No. 14 C 1905, 2015 WL 738694, at *3 (N.D. Ill. Feb. 19, 2015) (declining to discount deference to plaintiff's choice of forum).

[101] *Carr-Stock v. Orthotic Rehab. Prods., Inc.*, 832 F. Supp. 2d 229, 242 (W.D.N.Y. 2011) (citation omitted).

[102] U.S. Dist. Cts., National Judicial Caseload Profile (Dec. 31, 2023), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2023.pdf; *id.* (holding this factor is neutral where median disposition time to resolve a civil case was 8.2 and 8.0 months in transferor and transferee districts).

[103]*Id.; see also A. Olinick & Sons v. Dempster Bros.*, 365 F.2d 439, 445 (2d Cir. 1966) (finding approximately eighteen-month difference significant).

[104] *Id.*

three years old than Massachusetts (148 compared to 417).[105]  Decreased docket congestion will allow the case to progress promptly.  Accordingly, this factor slightly weighs against transfer.

> e.     **Plaintiffs' Chosen Forum Deserves Deference and Disfavors Transfer.**

Boehringer argues that plaintiffs' choice of Connecticut should not receive deference because of the first-filed rule, plaintiffs have no connection to the forum, and this is a proposed class action.[106]  However, the deference owed plaintiffs' choice of forum "is even greater where there is a material connection or significant contact between the forum state and the events allegedly underlying the claim, or where the plaintiff's chosen forum is its principal place of business."[107]  Plaintiffs sued in the home forum of Boehringer's U.S. subsidiary to obtain personal jurisdiction over that defendant and minimize litigation of collateral issues.[108]  The ability to obtain jurisdiction over a defendant is a legitimate reason to select a particular venue and "gives greater deference to a plaintiff's forum choice."[109]  Indeed, the Second Circuit counsels that "[a] plaintiff should not be compelled to mount a suit in a district where she cannot be sure of perfecting jurisdiction over the defendant[.]"[110]  The cases Boehringer cites—*Wyler-Wittenberg* and *Intema*—are inapposite because they do not involve the two overriding circumstances that make the first-filed rule inappropriate here:  forum shopping and general

---

[105] *Id.*

[106] Mot. at 13.

[107] *Am. Steamship Owners*, 474 F. Supp. 2d at 486.

[108] *Supra,* Section III.C.2.

[109] *Iragorri*, 274 F.3d at 73.

[110] *Id.*

personal jurisdiction over a defendant in the plaintiffs' chosen forum.[111]  The *Warrick* case,
moreover, *supports* plaintiffs' chosen forum.  In *Warrick*, the Second Circuit *reversed* a transfer
order because the district court failed to consider the convenience factors that supported
plaintiffs' choice of forum.[112]  This factor weighs against transfer.

### f.  Judicial Economy and the Interest of Justice Disfavor Transfer.

As discussed above, maintaining this action in Connecticut will obviate potential
litigation regarding personal jurisdiction over Boehringer's U.S. subsidiary.[113]  Judicial economy
and the interests of justice favor venues where the court will not need to expand resources
litigating difficult questions of personal jurisdiction.[114]  Such questions were entirely absent in
Boehringer's authorities unlike the situation here.[115]

### g.  The Remaining Factors Are Neutral.

Other factors do not favor either district.  "The location of relevant documents is largely a
neutral factor in today's world of faxing, scanning, and emailing documents."[116]  Familiarity

---

[111] *Wyler-Wittenberg*, 899 F. Supp. 2d at 246 ("[N]either party has accused the other of forum shopping."); *Intema*, 654 F. Supp. 2d at 139 ("[T]he Court finds no evidence of improper forum shopping . . . .").

[112] *Warrick*, 70 F.3d at 740-41.

[113] *Supra*, Section III.C.2.

[114] *See SoccerSpecific.com v. World Class Coaching, Inc.*, No. CIV. 08-6109-TC, 2008 WL 4960232, at *5 (D. Or. Nov. 18, 2008) (collecting cases transferring to venue where personal jurisdiction is certain); *Terukuni Kaiun Kaisha, Ltd. v. C. R. Rittenberry & Assocs.*, 454 F. Supp. 418, 422-23 (S.D.N.Y. 1978) (transferring to defendant's home district to avoid "risk of squandered energies" from litigating personal jurisdiction).

[115] *Delta Air Lines, Inc. v. Ass'n of Flight Attendants*, 720 F. Supp. 2d 213, 217 (E.D.N.Y. 2010) ("The parties do not dispute that Delta could have brought the current action in the District of Columbia."); *Williams v. City of New York*, No. 03 Civ. 5342(RWS), 2006 WL 399456, at *2 (S.D.N.Y. Feb. 21, 2006) ("It is undisputed that Williams could have filed the initial complaint in this action against the Defendant in the Eastern District of New York.").

[116] *Am. Steamship Owners*, 474 F. Supp. 2d at 484.

with the governing law is also neutral because federal courts are "equally familiar with federal law," and either court will need to decide issues under other states' laws.[117]  Lastly, relative means of the parties is neutral as this is not a case with, for example, individuals on one side and large corporations on the other.[118]

*     *     *

This Court has found that the balance of convenience factors warranted deviation from the first-filed rule twice before.[119]  *Boehringer Ingelheim Vetmedica* is particularly analogous. There, plaintiff Boehringer Ingelheim Vetmedica (a corporate entity related to defendants in the this matter) filed a declaratory judgment against defendant Merial Limited and Protein Sciences Corporation ("PSC") after Merial sued it in the Middle District of Georgia for patent infringement.[120]  Plaintiff Boehringer Ingelheim Vetmedica *opposed* transfer from Connecticut. This Court denied Merial's motion to transfer the action pursuant to the first-filed rule.[121]  Four factors weighed against transfer:  the convenience of the witnesses, the availability of process to compel unwilling witnesses, the locus of operative facts, and the plaintiffs' choice of forum.[122] The first three factors centered on the fact that one defendant—PSC—resided in Connecticut and

---

[117] *Royal & Sun All. Ins., PLC v. Nippon Express USA, Inc.*, 202 F. Supp. 3d 399, 410 (S.D.N.Y. 2016) (finding this factor was neutral when dispute potentially involved New York, Georgia, Ireland, and federal law).

[118] *See Hawley v. Accor N. Am., Inc.*, 552 F. Supp. 2d 256, 260-61 (D. Conn. 2008).

[119] *See Nova Grp.*, 2011 WL 5570793, at *3; *Boehringer Ingelheim Vetmedica*, 2010 WL 174078, at *16-17 (denying motion to transfer latter filed-action to the forum of the first-filed case).

[120] 2010 WL 174078, at *2-3.

[121] *Id.* at *16-17.

[122] *Id.*

many of the events giving rise to the action occurred in Connecticut.[123]  So too here.  As a result of Boehringer maintaining its headquarters and primarily executing its monopolization scheme in Connecticut, the convenience of witness, availability of process to compel attendance of unwilling witnesses, locus of operative facts, convenience of the parties, plaintiffs' choice of forum, and judicial economy and interest of justice factors all weigh against transfer.  The relative docket conditions also favor Connecticut, and the remaining factors are neutral. Altogether, seven factors favor maintaining this action in Connecticut, and none favor Massachusetts.  In short, "[n]ot only have movants failed to show that the balance of convenience tips in their favor, but their obviously improper motivations provide an adequate basis for denying the motion in its entirety."[124]

### D.      The Court Should Not Enter a Stay.

Boehringer fails to meet its high burden to stay this action, which is granted "[o]nly in rare circumstances."[125]  *First* and foremost, Boehringer premises its proposed stay on the first-filed rule, which as discussed above either does not apply to this proposed class case given Boehringer's forum shopping or is outweighed by the balance of convenience factors.[126]

*Second*, Boehringer fails to "make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will

---

[123] *Id.*

[124] *Williams Advanced Materials*, 2007 WL 2245886, at *6.

[125] *Montro Corp. v. Prindle*, 105 F. Supp. 460, 465 (S.D.N.Y. 1952) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).

[126] *Supra*, Sections III.C.2 and III.C.5; *see also Quinn*, 958 F. Supp. 2d at 540 (denying stay of class action based on first-filed rule).

work damage to some one else."[127]  It wholly ignores the standard for stays, which requires balancing[128]:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

These factors counsel against a stay.  The damage of a stay to plaintiffs is straightforward. Plaintiffs have overpaid for Combivent Respimat and Spiriva Respimat and will continue to do so until they obtain their requested injunctive relief.[129]  Public interest is likewise clear—courts have long recognized that the enforcement of antitrust law is a matter of significant public importance.[130]  That access to justice hangs in the balance where Boehringer seeks to litigate in a jurisdiction where it can decline to make its witnesses available for live testimony at trial, where it believes that it will be subject to more favorable class certification jurisprudence, and where it could potentially challenge personal jurisdiction.[131]

By contrast, Boehringer overstates the burden to itself and to the courts.  Its concern about duplicative litigation is one of its own making.  Boehringer has been aware of the two

---

[127] *Am. Steamship Owners*, 474 F. Supp. 2d at 482 (quoting *In re Literary Works in Elec. Databases Copyright Litig.*, No. M-21-90 GBD, 2001 WL 204212, at *2 (S.D.N.Y. Mar. 1, 2001)).

[128] *Id.* (citation omitted).

[129] Am. Compl. ¶ 195.

[130] *See, e.g.*, *United States v. Topco Assocs.*, 405 U.S. 596, 610 (1972) ("Antitrust laws in general, and the Sherman Act in particular, are the Magna Carta of free enterprise."); *United States v. Standard Ultramarine & Color Co.*, 137 F. Supp. 167, 170 (S.D.N.Y. 1955) ("The antitrust statutes, as has so often been emphasized, are aimed at assuring that our competitive enterprise system shall operate freely and competitively. . . . Upon their vigorous and constant enforcement depends the economic, political and social well-being of our nation.").

[131] *Supra*, Section III.C.2.

actions pending in two jurisdictions for months and chose not to move to transfer until now.[132]  It could have employed the multiple other options discussed above to avoid duplication.[133]  Boehringer instead seeks to transfer the case to a *more inconvenient forum* that it believes will be more tactically favorable.[134]  In this respect, this case differs from the *Regions Bank* case on which it relies because the two cases at issue there were filed six months (not seven weeks) apart and the defendant did not engage in forum shopping.[135]  Furthermore, stay the case *until when*? Perversely, staying the case means that if Boehringer were to prevail in Massachusetts, the whole case would then have to be relitigated here.  A stay only promotes efficiency if Boehringer loses in Massachusetts.  The fact that Boehringer nevertheless seeks a stay shows the lengths to which it will go to achieve its goal of litigating the case in its preferred forum, Massachusetts.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Boehringer's motion.

---

[132] *See* Joint Mot. Extension of Time (June 3, 2024), ECF No. 22 (stipulating that Boehringer would accept service through counsel); Stipulation, *Massachusetts Laborers* (D. Mass. Apr. 9, 2024), ECF No. 16 (same).

[133] *Supra*, Section III.B.

[134] *Am. Steamship Owners*, 474 F. Supp. 2d at 482; *see also Shimon*, 2018 WL 4906245, at *2 ("[U]sing the first-filed rule to stay . . . a concurrently pending class action would undermine other efficiency-maximizing Congressional directives.").

[135] *Regions Bank v. Wieder & Mastroianni, P.C.*, 170 F. Supp. 2d 436, 440 (S.D.N.Y. 2001).

Date:  August 6, 2024                    Respectfully submitted,


                                         By: */s/ Lin Y. Chan*

                                         Brendan P. Glackin (*pro hac vice*)
                                         Lin Y. Chan (*pro hac vice*)
                                         Jules A. Ross (*pro hac vice*)
                                         275 Battery Street, 29th Floor
                                         San Francisco, CA  94111-3339
                                         Telephone:  415.956.1000
                                         Facsimile:  415.956.1008
                                         lchan@lchb.com
                                         bglackin@lchb.com
                                         jross@lchb.com

                                         Dan Drachler (*pro hac vice*)
                                         Emily N. Harwell (*pro hac vice*)
                                         250 Hudson Street, 8th Floor
                                         New York, NY 10013
                                         Telephone: 212.355.9500
                                         Facsimile: 212.355.9592
                                         ddrachler@lchb.com
                                         eharwell@lchb.com

                                         Gregg D. Adler (CT 05698)
                                         Dan Livingston (CT 04226)
                                         LIVINGSTON, ADLER, PULDA, MEIKLEJOHN &
                                         KELLY, PC
                                         557 Prospect Avenue
                                         Hartford, CT 06105
                                         Telephone: (860) 454-9608
                                         Facsimile: (860) 232-7818
                                         gdadler@lapmk.org
                                         delivingstonlapm@gmail.com

                                         *Attorneys for 1199SEIU National Benefit Fund, 1199SEIU
                                         Greater New York Benefit Fund, 1199SEIU National
                                         Benefit Fund for Home Care Workers, and 1199SEIU
                                         Licensed Practical Nurses Welfare Fund, on behalf of
                                         themselves and others similarly situated*

## CERTIFICATE OF SERVICE

I certify that the foregoing was duly served upon all Counsel of record via the Court's

CM/ECF system on August 6, 2024.

By: */s/ Lin Y. Chan*